UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JACK SELINSKY,

          Plaintiff,

    V.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

**REPORT AND RECOMMENDATION**

08-CV-1363
(GLS/VEB)

## I. INTRODUCTION

In July of 2005, Plaintiff Jack Selinsky applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since May 1, 2004, due to physical impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorney, Peter W. Antonowicz, Esq., commenced this action on December 23, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On May 10, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for

SSI benefits and DIB on July 30, 2005, alleging disability beginning on May 1, 2004.[1] (T at 50-53).[2]  The applications were denied initially on November 17, 2005. (T at 24-30). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 31). A hearing was originally scheduled for September 18, 2007, but was adjourned at the request of Plaintiff's non-attorney representative. (T at 348).  A hearing was thereafter held in Syracuse, New York on April 1, 2008, before ALJ Jack Ryan.  (T at 330).  Plaintiff, accompanied by a non-attorney representative, appeared and testified.  (T at 330-345). On April 24, 2008, ALJ Ryan issued a decision denying Plaintiff's applications. (T at 13-19). The ALJ's decision became the Commissioner's final decision on November 12, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

Plaintiff timely commenced this action on December 23, 2008. (Docket No. 1).  The Commissioner interposed an Answer on November 17, 2009. (Docket No. 10).  Plaintiff filed a Brief in support of the action on February 2, 2010. (Docket No. 13).  The Commissioner filed a Brief in opposition on April 2, 2010. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[1] Plaintiff's application indicates a May 2004 onset date (T at 50, 58, 76), although he states that the allegedly disabling conditions first bothered him in March of that year. (T at 58).  A subsequent report also indicates an onset date of March 1, 2004 (T at 82), which is the date adopted by the ALJ.(T at 13). Because the slight difference between the two dates does not appear to be a material issue in this case, this Court will adopt the earlier date used by the ALJ.

[2] Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further administrative proceedings.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

### 1.   Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2006. (T at 15).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.(T at 15).  The ALJ concluded that Plaintiff had the following impairments considered "severe" under the Act: a medial meniscus tear of the left knee (status post arthroscopic repair) and lumbar degenerative disc disease. (T at 15).

However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 16).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

30 pounds occasionally and 10 pounds frequently; stand/walk for at least 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday; push/pull 10 pounds occasionally and less than 10 pounds frequently with the lower extremities; and occasionally climb, balance, stoop, knell, crouch, or crawl. (T at 16-17). The ALJ determined that Plaintiff could not perform any of his past relevant work as a mechanic, tow truck driver, or scrap metal worker. (T at 18).

Considering Plaintiff's age (37), education (marginal), and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 18). As such, the ALJ concluded that the Plaintiff was not disabled as defined under the Act and was therefore not entitled to benefits. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on November 12, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 4-7).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers two (2) principal arguments in support of this position. First, Plaintiff challenges the ALJ's determination with regard to his residual functional capacity. Second, Plaintiff argues that the ALJ did not properly assess his credibility. This Court will address each argument in turn.

### a. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily,

RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ determined that Plaintiff had the RFC to perform a full range of sedentary work, including the ability to lift/carry 30 pounds occasionally and 10 pounds frequently; stand/walk for at least 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday; push/pull 10 pounds occasionally and less than 10 pounds frequently with the lower extremities; and occasionally climb, balance, stoop, knell, crouch, or crawl. (T at 16-18).

This Court finds that the ALJ's RFC assessment was not properly rendered. Laura Arndt, Plaintiff's treating nurse practitioner, opined that Plaintiff was unable to perform any work activity. (T at 120-21). The ALJ correctly noted that the disability determination is ultimately reserved to the Commissioner. (T at 17) 20 C.F.R. § 404.1527(e); SSR 96-5p. Likewise, the ALJ was correct that nurse practitioners are not "acceptable medical sources" under the Regulations. 20 C.F.R. § 416.913(a).

However, a nurse practitioner is included among "other sources," whose opinion may

be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913(d)(1).  While an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, especially when there is a treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F.Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist"); White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Rivera v. Bowen, 665 F.Supp. 201, 206 (S.D.N.Y.1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight).

This Court is mindful of the fact that the Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995). However, it was an abuse of that discretion for the ALJ in this case to reject the nurse practitioner's assessment out of hand and without any further exploration into the basis for her assessment and/or whether it was consistent with the other evidence of record. See Gillies v. Astrue, No. 07-CV-517, 2009 WL 1161500, at *6 (W.D.N.Y. Apr. 29, 2009) (vacating and remanding where ALJ rejected opinion of nurse practitioner solely because

"nurse practitioners are not necessarily considered to be acceptable sources of medical evidence" (internal citations omitted); see also Canales v. Commissioner of Social Sec., No. 08-CV-5019, 2010 WL 1140861, at *8 (E.D.N.Y. Mar. 26, 2010)("While the ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, the ALJ had to explain that decision.").

The ALJ's failure to give proper consideration to the nurse practitioner's opinion is compounded by the fact that the ALJ's RFC assessment is not directly supported by any of the medical source evidence. In fact, Dr. Myra Shayevitz, the consultative examiner, opined that Plaintiff would "[d]efinitely" have "significant limitations in sitting, standing, walking, and anything . . . [that] might require repetitive rapid neck movement." (T at 143). Dr. Shayevitz noted that Plaintiff appeared to be in "significant discomfort." (T at 143). Rather than considering that the consultative examiner's assessment provided support for the nurse practitioner's determination, the ALJ summarily cast aside the consultative examiner's opinion as "vague" and "not necessarily" inconsistent with sedentary work. (T at 17).

As a threshold matter, this Court is not convinced that the consultative examiner's assessment was, in point of fact, vague, or, for that matter, that her findings were "not inconsistent" with sedentary work. One might reasonably conclude that a person with significant limitations as to sitting might be precluded from performing sedentary work. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996) ("Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday").

In any event, even the consultative examiner's assessment was arguably vague, it is well-established in the Second Circuit that an ALJ has an affirmative duty to develop the

record "in light of the essentially non-adversarial nature of a benefits proceeding." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996). Thus, the ALJ should have re-contacted the consultative examiner and requested clarification with regard to the aspects of the assessment that he found "vague."

It likewise bears noting that the ALJ's RFC assessment was also inconsistent with the findings of the State Agency review consultant, who opined that Plaintiff could lift/carry 10 pounds occasionally (as opposed to 30 pounds as assessed by the ALJ) and less than 10 pounds frequently. (T at 146).

Lastly, the ALJ's RFC determination is based largely upon his mischaracterization and/or overstatement of evidence concerning Plaintiff's activities of daily living. First, it must be noted that "[s]uch activities do not by themselves contradict allegations of disability," as people "should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Moreover, the ALJ selectively cited portions of the record concerning Plaintiff's activities without obtaining important details. For example, the ALJ indicated that Plaintiff performed "services as a night watchman in exchange for a small wage and a place to live." (T at 17). The evidence cited in support of this statement was a handwritten note from a person named Carmen Mauro, who indicated that he had paid Plaintiff "$20 and $30 a week" and that, in return, Plaintiff was "staying on my premises and watching my business." (T at 109). No further details were obtained by the ALJ with regard to this activity. The

wording of the note raises the possibility that Plaintiff parked his camper at the business and "watche[d]" the business by sleeping nearby (much like a person who is "housesitting"). The ALJ's use of the phrase "night watchman" (a phrase chosen by the ALJ, not by the person who reported the activity) implies a night-long enterprise of sitting or standing guard. This may or may not have been the case here. In any event, before citing the handwritten note and characterizing the activity as the job of "night watchman," the ALJ did not ascertain how often the work was performed and/or what sort of exertional physical activity, if any, it involved.

Likewise, the ALJ stated that Plaintiff "testified that he has a lifting and carrying limit of 30 pounds." (T at 18). This suggests that Plaintiff testified that 30 pounds was the limit he placed on his own ability to lift/carry. However, Plaintiff actually testified that his nurse practitioner (incorrectly identified as a doctor) had "put [him] on 30 pounds of lifting or carrying." (T at 339). The ALJ did not follow-up with any questions concerning when this assessment was made or how often Plaintiff might be able to lift 30 pounds or whether Plaintiff thought this limitation was consistent with his actual abilities. Further, it is notable that when the nurse practitioner's assessment supported his findings, the ALJ had little hesitancy in citing and relying on it (without attribution), notwithstanding the fact that the nurse practitioner's opinion regarding Plaintiff's overall level of disability had been summarily cast aside.

For these reasons, this Court finds that a remand is necessary for further development of the record. On remand, the ALJ should re-contact the treating nurse practitioner to obtain the basis for her assessment regarding Plaintiff's RFC and then reconsider his assessment of the weight to be afforded to the nurse practitioner's opinion.

Although that opinion is not entitled to deference under the treating physician's rule, it is entitled to some consideration as the assessment of a treating "other source." Re-contacting the consultative examiner may also be helpful to this analysis. Also, further information should be obtained concerning Plaintiff's daily activities.

### b.  Credibility Determination

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically

determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified to limitations caused by pain while sitting, walking, lifting, and standing (T at 338-9, 342, 344). The ALJ discounted this testimony based, in large measure, upon his assessment that Plaintiff's activities of daily living contradicted the limitations. However, as set forth above, the ALJ was too quick to reach conclusions about

Plaintiff's activities and did not properly develop the record as to the nature and extent of, for example, the "night watchman" job.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

14

Dated: June 14, 2010
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 14, 2010

*/s/ Victor E. Bianchini*
Victor E. Bianchini
United States Magistrate Judge